Wolf, Pennella & Stevens, LLP
Paul Wolf, State Bar No. 78624
717 Washington Street
Oakland, CA 94607
Phone (510) 451-4600
Fax (510) 451-3002
paul@pdwolflaw.com

Counsel for Defendant
ANDRE GRIFFIN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

   v.

ANDRE GRIFFIN,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. CR 12-00526-PJH

DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

Date: March 15, 2017
Time: 1:30 p.m.
Court: Hon. Phyllis Hamilton

Defendant Andre Griffin submits this supplemental memorandum in response to certain issues raised, and arguments presented, by the Government and Probation Officer in the memoranda they have submitted to the Court addressing sentencing in this case.

**Probation Officer's Reference to Dismissed Charge Four**

As a preliminary issue, the Probation Officer's memorandum (at page 3) refers to, and summarizes allegations made in, Charge Four of the Form 12 submitted December 2, 2016. That charge was not admitted by Mr. Griffin. Moreover, it was agreed between the parties, before Mr. Griffin admitted to other less serious charges in that Form 12, that the allegations in Charge Four would not be argued to the Court as a basis for the sentence for Defendant's violations of supervised release.

From the inception of discussions/negotiations between the parties about how to proceed in, and possibly resolve, this Form 12, the defense was unequivocal in its position that all the allegations in that

DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM
CR 12-00526-PJH

1

charge were false and fabricated by a former girlfriend after she was informed that Defendant was not interested in continuing their relationship and was involved in an exclusive relationship with another woman, Anjinay Walker, who is now expecting Mr. Griffin's child.  Based on preliminary investigation and communication with the Alameda County Assistant District Attorney who had decided not to charge the case, the undersigned informed Government counsel in this case that multiple witnesses had been identified who would support the conclusion that all allegations contained in that Charge were false. However, because of their seriousness, the defense requested, and the government agreed that, as a part of the negotiated resolution of this matter, this should not be argued or considered as a basis for the sentence in this case.   This argument was discussed during the hearing before this Court, during which my client made his admissions and the other Charges were dismissed.  If the Court is going to consider them in determining Defendant's sentence, the defense would request a further continuance of these proceedings to attempt to obtain and present testimony that contradicts and disproves the allegations in Charge Four.

### The Incident at the Residential Reentry Center

An argument between Mr. Griffin and another resident, Richard Gahagan, over the use and storage of an iron that belonged to the Center, eventually lead to a physical altercation between them. Mr. Gahagan was more seriously injured during that fight and was treated in hospital. Mr. Griffin was arrested, but the charges against him were dismissed.  Nonetheless, he was discharged from the halfway house in violation of the condition of supervised release that he reside there, a condition to which he had agreed.

Pursuant to an agreement by the parties, a video of part of the physical altercation has been submitted to the Court.  The Probation Officer argues that the video shows that Mr. Griffin was waiting for Mr. Gahagan, and as he (Mr. Gahagan) approached the elevator, Mr. Griffin punched him. Moreover, in the Probation Officer's opinion, Mr. Griffin instigated the altercation.  We view the video

DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM
CR 12-00526-PJH

and the incident differently.  Mr. Griffin was not waiting for Mr. Gahagan to instigate a physical fight. There had been an earlier argument between them that had not been resolved.  So when they next ran into each other as Mr. Griffin reached the top of the stairs that Mr. Gahagan happened to be heading toward to descend, a fight started before either man could avoid each other or be sure the other would not punch first.  There is no doubt that Mr. Gahagan continued to fight after the first punch.  Indeed, as Mr. Griffin left the scene down the stairs, Mr. Gahagan followed right after him, apparently prepared to continue the physical altercation after Mr. Griffin had clearly stopped and was retreating.

One undisputed fact about this altercation is that it arose from an argument about an iron.  Mr. Griffin has had four full months back in custody considering, as he himself puts it: "How stupid the behavior was – over an iron!"  Mr. Griffin is not a person who resolves disagreements with violence.  As his record reflects, and as his family and friends know, he is not a violent person.  The contrary is true.

**CONCLUSION**

Both the Government and Probation argue that another eight months in custody "hopefully will motivate" Andre Griffin to take supervised release more seriously.  Such a sentence – particularly considering all the opportunity, support, and reasons he has to succeed at liberty with his family now – would much more likely discourage him from behaving in compliance with the terms and conditions of supervised release as well as the laws and expectations of society and his community.  Again, we ask this Court to sentence Mr. Griffin to as little additional custody time as necessary.  However, please release him prior to the birth of his child.

Dated: March 10, 2017                                   Respectfully Submitted:


                                                       /s/
                                                       Paul Delano Wolf
                                                       Wolf, Pennella & Stevens, LLP
                                                       Attorney for Andre Griffin

DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM
CR 12-00526-PJH